**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**CARL D. JACKSON
ADC #98003**                                                              **PLAINTIFF**

**V.**                                  **CASE NO. 5:14-CV-314 JLH/BD**

**RAY HOBBS, et al.**                                                         **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.      Procedures for Filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge J. Leon Holmes.  You may file written objections to this

Recommendation.  If you file objections, they must be specific and must include the

factual or legal basis for your objection.  Your objections must be received in the office of

the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without

independently reviewing the record.  Also, by not objecting, you may waive any right to

appeal questions of fact.

### II.     Background:

Carl D. Jackson, an Arkansas Department of Correction inmate, filed this lawsuit

pro se under 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional

rights.  (Docket entry #2)  Based on the allegations in his complaint, Mr. Jackson was

allowed to proceed on his excessive-force claims against Defendants Nelson, Owens, and

Palmer; his retaliation claims against Defendants Nelson and Owens; and his deliberate-indifference claims against Defendants Hobbs, Evans, Straughn, Outlaw, Williams, Shipman, Spears, Morris, and Kelly.  (#4)

Defendants moved for summary judgment on Mr. Jackson's excessive-force and deliberate-indifference claims.  (#28)  After Mr. Jackson responded to the Defendants' motion, the Court notified the parties that it was also considering summary judgment on Mr. Jackson's retaliation claims against Defendants Nelson and Owens.  See Federal Rule of Civil Procedure 56(f)(3).  (#32, #34)

Defendants then moved for summary judgment on Mr. Jackson's retaliation claims.  (#38)  Mr. Jackson has now responded to that motion, and both motions for summary judgment are ripe for decision.

For the reasons explained below, the Court recommends that the Defendants' motions for summary judgment (#28, #38) be GRANTED.

## III.   **Discussion**:

### A.    Standard

In a summary judgment, the court rules in favor of a party before trial.  A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,*

477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

Here, Defendants presented evidence to support their contention that there is no real dispute about any of the material facts, that is, facts that would make a difference in how the case is decided.   *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  That placed the burden on Mr. Jackson to come forward with evidence showing that important facts really are in  dispute.  If he has not carried that burden, the Court must grant summary judgment in favor of Defendants; and there will be no trial. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

B.     Mr. Jackson's Version of Events

In his complaint, Mr. Jackson alleges that on April 29, 2013, Defendants Nelson, Owens, and Palmer came to his cell to conduct a property search.  They handcuffed Mr. Jackson behind his back and attached leg restraints.  Mr. Jackson told Defendant Nelson that he had a "double cuff" script due to shoulder and wrist injuries.[1]  Defendant Nelson informed Mr. Jackson that he did not have two sets of handcuffs but that the search would not take very long.

During the search, Mr. Jackson alleges, Defendant Nelson threw various items of personal property out of his cell.  Mr. Jackson questioned Defendant Nelson's conduct.

---

[1] When double handcuffs are used, there is considerably less strain on the inmate's wrists and shoulders because the second set of cuffs functions as an extension.

3

At that time, Defendant Owens allegedly slammed Mr. Jackson into the cell bars and Defendant Palmer attempted to pull him off his feet by his leg irons.  When Mr. Jackson inquired as to why Defendant Owens was using such force, Defendant Nelson "maced" Mr. Jackson in his face without warning, while using derogatory language.  Defendants Nelson and Owens then slammed Mr. Jackson into the cell door and onto the floor. Defendants Nelson and Owens allegedly continued to hold Mr. Jackson on the floor while Defendant Nelson "maced" him twice more.

Mr. Jackson was taken to the shower area for decontamination.  When the showers were turned on, Mr. Jackson complained that the water was too hot.  According to Mr. Jackson, Defendants Nelson and Owens "shoved" him under the hot water, and Defendant Nelson hit him in the side of the face and told him to stop crying "like a bitch." (#2 at p.7)  Mr. Jackson explains that he was left in the extremely hot shower while restrained in handcuffs and leg irons.

While Mr. Jackson was in the shower, Defendant Shipman entered isolation.  Mr. Jackson explains that he "begged" Defendant Shipman to turn off the hot water and remove the restraints.  Although Mr. Jackson states that Defendant Shipman did not say anything to Mr. Jackson, the hot water was turned off.

According to Mr. Jackson, a medical staff member came to the shower area about forty minutes later.  Mr. Jackson informed him that he had sustained injuries to his eyes, lungs, head, shoulder, wrist, and back.  Mr. Jackson also informed the medical staff

member that he was in need of cool water to rinse the mace from his face.  Mr. Jackson explains that he was not provided any medical treatment at that time and was returned to his cell.

When Mr. Jackson returned to his cell, he discovered that all of his personal property had been removed.  He overheard Defendant Nelson state that Mr. Jackson was being placed on "behavior control."  Mr. Jackson claims that he was left with only the wet pair of boxer shorts that he was wearing.  When Mr. Jackson informed Defendant Nelson that he was in need of dry clothing and other personal items, Defendant Nelson allegedly had the "blowers" turned on in isolation.

After the shift change in isolation that evening, Mr. Jackson requested a blanket, water, and a cup.  Defendant Morris informed Mr. Jackson that he was only entitled to a blanket since he was on "behavior control."  Mr. Jackson then told Defendant Spears that he needed a blanket.  Mr. Jackson states that he received a blanket around 10:30 or 11:00 p.m.

Mr. Jackson explains that he later filed a grievance regarding the incident.  Since filing that grievance, Defendant Nelson and Owens have threatened him.  He alleges that he has appealed the denial of his grievances, but that Defendants Williams, Straughn, Outlaw, Hobbs, and Evans have condoned the conduct of Defendants Palmer, Owens, and Nelson.

C.      Exhaustion

The Prison Litigation Reform Act requires the Court to dismiss any claim that was not fully exhausted prior to the filing of a civil lawsuit under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

In their motion, Defendants allege that Mr. Jackson failed to fully exhaust his administrative remedies against Defendants Kelley, Shipman, Morris, and Spears.  In addition, in their second summary judgment motion, they argue that Mr. Jackson failed to fully exhaust his administrative remedies regarding his retaliation claim against Defendants Nelson and Owens.  They attach to their motions the declarations of Terri Brown and Barbara Williams, ADC grievance coordinators.  (#30-8; #40-1)  According to Ms. Brown and Ms. Williams, Mr. Jackson fully exhausted six grievances regarding the events giving rise to this lawsuit, MX-13-813, MX-13-817, MX-13-850, MX 13-853, MX-13-858, and MX-13-886.  (#30-8 at p.1; #40-1 at p.2)

In grievance MX-13-813, Mr. Jackson complained that he was assaulted by multiple ADC officers, but that Sgt. Crockett (not a party to this lawsuit) would not allow him to use the telephone to report the alleged assault.  (#30-8 at p.3)

The Defendants contend that because Mr. Jackson identifies only Sgt. Crockett in this grievance, it is "not relevant for exhaustion purposes as it was not written against any of the defendants."  (#29 at p.10)  The Warden/Supervisor's decision regarding grievance MX-13-813, however, reads "[s]taff advises you were not threatened or assaulted."

Mr. Jackson did not name other ADC officers in grievance MX-13-813, but ADC officials apparently investigated the allegations of assault mentioned in the grievance and concluded that Mr. Jackson had not been "threatened or assaulted."  Because Defendants concede that Mr. Jackson exhausted his excessive-force claims against Defendants Nelson, Owens, and Palmer in another grievance, their exhaustion argument regarding grievance MX-13-813 is irrelevant.

In grievance MX-13-817, Mr. Jackson complained that he was not provided a mattress, a drinking cup, shoes, or a jump suit after he was placed on behavior control.  (#30-8 at p.9)  He claims that Defendants Morris and Spears informed him that Defendants Strong, Outlaw, Hobbs, and Evans drafted the policy prohibiting him from possessing these items while he was assigned to behavior control.  (*Id.*)

In grievance MX-13-850, Mr. Jackson complained that Defendants Nelson, Owens, and Palmer used excessive force against him and took his personal property.

7

(#30-8 at p.18)  Again, in grievance MX-13-853, he alleged that Defendants Shipman and

Nelson took his personal property.  (#30-8 at p.23)  That grievance was rejected by ADC

officials as duplicative.

In grievance MX-13-858, Mr. Jackson complained that his legal materials had

been confiscated.  (#30-8 at p.29)

Finally, in grievance MX-13-886, Mr. Jackson complained that Defendants

Straughn, Outlaw, and Williams were aware of the alleged assault that involved Mr.

Jackson and Defendant Nelson, but failed to properly investigate the incident.  He alleges

that by failing to properly react to the situation they have "condone[d]" Defendant

Nelson's misconduct.  (#30-8 at p.36)

Based on this evidence, the Court concludes that Mr. Jackson failed to exhaust

claims raised against Defendant Shipman in this lawsuit.  In grievance MX-13-853, he

complained that Defendant Shipman confiscated his personal property, but he did not

raise that claim in his complaint.  Rather, Mr. Jackson complains that Defendant Shipman

did not provide him any assistance when he was in the shower in isolation immediately

following the alleged assault.  As a result, his claims against Defendant Shipman should

be DISMISSED, without prejudice, based on his failure to exhaust his administrative

remedies.

Furthermore, Mr. Jackson failed to fully exhaust any claim against Defendant

Kelly.  His only reference to Defendant Kelly in his complaint is that she could have his

"head busted in any time." (#2 at p.21)  Mr. Jackson did not raise this claim in any of his fully exhausted grievances.  Therefore, his claims against Defendant Kelly should also be DISMISSED, without prejudice.

In addition, the Defendants correctly argue that Mr. Jackson failed to exhaust administrative remedies regarding his claims against Defendants Morris and Spears.  In his complaint, Mr. Jackson alleges that on the date of the underlying incident, Defendant Morris denied his request for a cup and that Defendant Spears denied his request for a blanket.  He explains that these Defendants informed him that he was not entitled to possess these items because he was on "behavior control."

In grievance MX- 13-817, Mr. Jackson complained that Defendants Morris and Spears told him the Defendants were responsible for drafting the regulations governing inmates placed on "behavior control," and argued that he should always be provided a mattress, drinking cup, sheets and a blanket.  (#30-8 at p.9)  Mr. Jackson did not specifically complain that these Defendants denied him access to his personal items; rather, he appears to contest the policy itself.

In response to this grievance, ADC staff explained that "[b]ehavior control inmates are not allowed to have a matt [sic], cups, shoes or Jumpsuit [sic]."  (#30-8 at p.10)  In the grievance appeal papers, Warden Straughn explained why Mr. Jackson was placed on behavior control.  These papers do not address specific conduct of Defendants Morris and Spears.  Based on this evidence, the Court cannot conclude that Mr. Jackson fully

9

exhausted his claim that Defendants Morris and Spears denied his request for a cup or a blanket.  As a result, these Defendants also are entitled to judgment as a matter of law.[2]

Finally, Mr. Jackson has not presented any evidence to refute the Defendants' evidence that he did not fully exhaust administrative remedies regarding his retaliation claim against Defendants Nelson and Owens.  In his complaint, Mr. Jackson alleges that, since the date of the underlying incident, he has been threatened a number of times by these individuals "[b]ecause of my grievances."  (#2 at p.13)  This claim, however, is not raised in any of Mr. Jackson's fully exhausted grievances.  (#40-1 at p.2)

In grievance MX-13-0086, Mr. Jackson alleged that Defendant Nelson had threatened him, but he did not allege that he was threatened as a result of filing any grievance against Defendant Nelson.  (#30-8 at p.36)

Here, Mr. Jackson has not come forward with any evidence that he raised a retaliation claim in any fully exhausted grievance to counter the Defendants' evidence; nor has he provided any evidence that he was prohibited from fully exhausting his

---

[2]  To the extent that it is necessary to address the merits of Mr. Jackson's claims against Defendants Morris and Spears, the Court refers to its discussion of Mr. Jackson's conditions-of-confinement claim addressed later in this Recommendation.  Because the Court has determined that Mr. Jackson's claim regarding the conditions of confinement while he was on behavior control fails as a matter of law, any claims against Defendants Morris and Spears based on the conditions of his confinement also fail.

administrative remedies regarding this claim.[3]  As a result, Mr. Jackson's retaliation claim

against Defendants Nelson and Owens should be DISMISSED, without prejudice.

> D.     Sovereign Immunity

Defendants also contend that Mr. Jackson's claims for money damages against

them in their official capacities are barred by sovereign immunity.  The law on this point

is clear.  A civil litigant cannot recover money damages from state actors sued in their

official capacities.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304

(1989).  Accordingly, Mr. Jackson's claims for money damages against the Defendants in

their official capacities must be dismissed.

> E.     Res Judicata/Collateral Estoppel

Defendants also argue that Mr. Jackson's claims are barred by issue or claim

preclusion because he previously litigated the claims raised in this lawsuit before the

Arkansas Claims Commission ("Claims Commission").  The Defendants attach the

relevant Claims Commission papers to their motion.

Recently, however, the Eighth Circuit addressed the issue of whether an inmate's

deliberate- indifference claim is precluded by a prior action before the Claims

---

[3]  In his response to the Defendants' motion for summary judgment on exhaustion grounds, Mr. Jackson complains that he was not allowed to engage in additional discovery after Defendants filed their motion.  This case, however, has been pending since August 2014, and the parties have an adequate opportunity to engage in discovery. In his response to the Defendants' motion, Mr. Jackson notes that he has requested additional discovery to show that he was threatened, but he does not state that he raised this claim in any fully exhausted grievance.  (#41 at p.2)

Commission.  *Smith v. Johnson*, 779 F.3d 867 (8th Cir. 2015).  In *Smith*, the trial court

dismissed an inmate's constitutional claims because he had previously brought an action

involving the same underlying facts before the Arkansas Claims Commission.  The Court

of Appeals reversed the trial court's dismissal, holding that claim preclusion does not

apply because the Claims Commission does not have jurisdiction to address a

constitutional claim against an ADC officer sued in his individual capacity.  Because the

Arkansas Claims Commission has "jurisdiction only over those claims which are barred

by the doctrine of sovereign immunity from being litigated in a court of general

jurisdiction," the "Claims Commission was the only forum in which [the inmate plaintiff]

could bring his claims against the State."  *Id*. at 870.   Sovereign immunity did not bar the

inmate plaintiff's claim against the officer in his individual capacity, so the Claims

Commission lacked jurisdiction over that claim.

The Eighth Circuit also explained that "[t]o invoke issue preclusion [] a defendant

must establish not only that a claim arises from the same facts, but that the *same issue*

was decided in the prior proceeding."  *Id*. at 871 (emphasis in original).  Because the

inmate plaintiff in *Smith* asserted only a negligence claim before the Claims Commission,

he was not precluded from bringing a deliberate-indifference claim in a section 1983

lawsuit.  The same reasoning applies to this case.

Here, in June 2014, Mr. Jackson filed an action before the Claims Commission

naming the same eleven Defendants that he sues in this lawsuit.  (#30-9 at pp.1-17)

Defendants are correct that Mr. Jackson asserted the same factual allegations in his Claims Commission lawsuit as those alleged in this lawsuit, but in his Claims Commission papers, he specifically stated that "[did] not wish to address any constitutionality [sic] issues that arise in my statement of claim."  (#30-9 at p.16)  In his action before the Claims Commission, Mr. Jackson alleged that he sought relief only for the Defendants' failure to follow proper procedure, negligence, pain and suffering, as well as mental anguish.  The Claims Commission dismissed Mr. Jackson's claims following a hearing.  (#30-9 at p.58)

Based on this evidence, the Court should allow Mr. Jackson to proceed on the remaining constitutional claims raised in this lawsuit.  Because he could not have raised those claims before the Claims Commission, he is not prohibited from bringing them in this lawsuit.  Mr. Jackson, however, should not be allowed proceed on the state-law negligence claims that he litigated before the Claims Commission.

F.      Qualified Immunity

Analyzing a claim of qualified immunity requires a two-step inquiry.  *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012).  In one step, the Court must determine whether the facts demonstrate a deprivation of a constitutional right.  *Id*. (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)).  In the other, the Court must determine whether the implicated right was clearly established at the time of the alleged deprivation.  *Id*. (citing *Parrish*, 594 F.3d at 1001).

13

In considering those steps at the summary judgment phase, a district court is required to view the genuinely disputed facts in the light most favorable to the non-moving party, provided the record does not contradict the facts so as to render that view unacceptable to any reasonable juror. *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007).

"Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 (1986)). As a result, "when an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff 'must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'" *Burns*, 752 F.3d at 1138 (citing *Crawford–El v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584 (1998)).

1.      Excessive-Force Claim against Defendants Nelson, Owens, and Palmer

"To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)

(internal citations and quotations omitted).  To prevail, Mr. Jackson must show that the Defendants used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, (1992); *Irving*, 519 F.3d at 446.  The relevant factors that must be considered when making this determination are the objective need for the force; the relationship between the need and the amount of force used; the threat reasonably perceived by the defendant; any efforts by the defendant to temper the severity of their forceful response; and the extent of the inmate's injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

The Defendants' version of the events giving rise to Mr. Jackson's excessive-force claim varies greatly from the events described by Mr. Jackson.  According to the Defendants, on April 29, 2013, at approximately 2:50 p.m., Defendants Nelson, Palmer, and Owens were conducting cell searches in the isolation area.  When Defendants approached Mr. Jackson's cell, they placed him in double handcuffs and leg restraints, and removed him from his cell.  (#30-2 at p.10)

While conducting the search, Defendants contend, Mr. Jackson began using abusive language and threatened Defendant Nelson.  (#30-2 at p.2)  Despite Defendant Nelson's order for Mr. Jackson to stop using threatening language, Mr. Jackson stated that he had a butcher knife for Defendant Nelson "and if he couldn't get to [him][,] he would hurt one of [his] family members and that was a promise." (*Id.*)

15

During the search, Defendants discovered several items that were not allowed for inmates in isolation.  (#30-2 at pp.1-2)  Those items were removed from Mr. Jackson's cell and turned over to the property sergeant.  (#30-2 at p.2)

After the search concluded, Defendant Palmer removed Mr. Jackson's leg restraints so that he could return to his cell.  According to Defendants, at that time, Mr. Jackson began walking aggressively towards Defendant Nelson, pushed him, and attempted to kick him.  (#30-2 at p.2)  Defendants Palmer and Owens placed Mr. Jackson against the wall to regain control of him.  (*Id*.)  Mr. Jackson began pushing away from Defendants Palmer and Owens and became more aggressive.  (*Id*. at p.3)  Defendant Nelson ordered Mr. Jackson to calm down.  (*Id*.)  Mr. Jackson continued to push away from Defendants Palmer and Owens and attempted to spit on Defendant Nelson.  (*Id*.)  Defendant Nelson directed Defendants Palmer and Owens to take Mr. Jackson to the ground to regain control of him.  (*Id*.)  Once Mr. Jackson was taken to the ground, Defendant Owens placed leg restraints back on Mr. Jackson.  (*Id*.)  Mr. Jackson continued to act in a combative manner and attempted to "buck" the other Defendants off of him.  (*Id*.)  Defendant Nelson then ordered Mr. Jackson to stop being combative and explained that a MK-4 spray (pepper spray) would be administered if he did not comply with his order.  (*Id*.)  According to the Defendants, Mr. Jackson did not comply and again attempted to spit on Defendant Nelson.  (*Id*.)  At that time, a one second burst of MK-4

16

was administered by Defendant Nelson.  (*Id*.)  Mr. Jackson then was given another direct order to stop being combative, to which he complied.  (*Id*. at p.4)

Mr. Jackson was then taken to the shower area for decontamination.  (*Id*.)  While in the shower, Defendants state that Mr. Jackson continued to act in a belligerent, combative manner, and threatened to kill ADC staff members.  (*Id*.)

While Mr. Jackson was in the shower stall, Health Services Administrator Alva Green arrived and attempted to examine Mr. Jackson.  She was unable to do so, however, because of Mr. Jackson's behavior.  She told Mr. Jackson that he would not be evaluated by a medical staff member until he calmed down.  (*Id*.)

Later, Marvin Hughey evaluated Mr. Jackson "after [he] calm[ed] down."  (#33-1) According to Mr. Hughey's notes, Mr. Jackson complained of pain in his neck, lower back, and head.  (*Id*.)  Mr. Hughey "did not see any overt signs of injury."  (*Id*.)  Mr. Hughey also noted that Mr. Jackson "refused to accommodate staff to listen to lungs." (*Id*.)

Although the Court must view the facts in the light most favorable to the non-moving party when ruling on a summary judgment motion, it is not required to "accept unreasonable inferences or sheer speculation as fact."  *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004).  Here, given the circumstances presented in this case, no reasonable jury could credit Mr. Jackson's version of events.  The Defendants' statements, given both at the time of the alleged incident and provided in

support of the instant motion, do not vary.  Each Defendant describes Mr. Jackson as

combative and aggressive.  Furthermore, in his complaint, Mr. Jackson states that he

questioned Defendant Nelson's actions when he began removing items from the cell, and

concedes that an argument that ensued.   (#2 at pp.4-5)  Mr. Jackson further concedes that

he told Defendant Nelson "that he was the one acting like a bitch."  (#2 at p.5)  In

addition, in his grievance papers, Mr. Jackson states that he told Defendant Nelson that

"he was a real bitch," and complains that it was inappropriate for him to be placed on

"behavior control" for "alot [sic] of trash talk."  (#30-8 at pp.18, 9)

Mr. Jackson complains that Defendant Nelson struck him in the eye, and that the

extremely hot shower that he was forced to endure caused "major burning and blisters,"

but there is no evidence to support these allegations.  (#30-8 at p.18)

Defendants provide a photograph of Mr. Jackson taken immediately following his

decontamination.  (#30-2 at p.21)  There is no visible sign of injury to Mr. Jackson's face

or nose in the photograph.  In addition, Mr. Jackson was placed back in his cell by

medical personnel without any treatment other than decontammination.  (#30-3 at p.4;

#30-4 at p.4)

In *Burns v. Eaton*, the Eighth Circuit determined that an ADC officer was entitled

to qualified immunity after administering multiple bursts of pepper spray to an inmate

who refused to comply with a specific order.  *Burns*, 752 F.3d 1136 (8th Cir. 2014).

Although the plaintiff inmate argued that the ADC officer used excessive force because

he posed no specific threat of harm, the Court disagreed. The Court ruled that because there was no "specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive," the officer was entitled to qualified immunity. *Id*. at 1140.

Similarly, based on the evidence presented here, Defendants Nelson, Owens, and Palmer acted reasonably in applying force to restrain a combative and aggressive inmate. Mr. Jackson continued to ignore Defendant Nelson's direct orders and was specifically cautioned that pepper spray would be administered if he did not comply. There is no evidence that Defendants applied force significantly greater than was necessary to regain control of Mr. Jackson; and Mr. Jackson was returned to his cell without medical treatment. Because the evidence Mr. Jackson offers amounts to "[m]ere allegations, unsupported by specific facts or evidence beyond [Jackson]'s own conclusions, [he cannot] withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

As a result, the Court cannot conclude that these Defendants violated any of Mr. Jackson's clearly established rights, and they are entitled to judgment as a matter of law.

2.      State Law Assault and Battery Claims

Defendants also contend that Mr. Jackson's state law tort claims of assault and battery are untimely. In his complaint, Mr. Jackson complains about events that occurred

19

on April 29, 2013.  He did not file this lawsuit until August 20, 2014.  Arkansas law requires that actions for assault or battery be filed within one year after the cause of action accrues.  ARK. CODE ANN. § 16-56-104(2).

Because Mr. Jackson has failed to present any evidence creating a genuine issue of material of fact on this issue, his state law tort claims for assault and battery should be dismissed, with prejudice, as untimely.[4]

> 3.  Constitutionality of ADC Policy regarding Behavior Control

Mr. Jackson also claims that the ADC policy limiting the personal property that an inmate may possess while assigned to "behavior control" is unconstitutional.  In addition, he argues that the policy was unconstitutionally applied to him.  Both claims fail as a matter of law.[5]

Mr. Jackson complains that the Defendants, by following ADC policy and confiscating his personal property, violated his constitutional rights.  He claims that it is

---

[4] Mr. Jackson could not have asserted these claims in a federal lawsuit under 42 U.S.C. § 1983 until after exhausting his administrative remedies.  According to Mr. Jackson's grievance papers, however, he had fully grieved his claims regarding Defendants Nelson, Owens, and Palmer by the end of May 2013.

[5] To the extent that Mr. Jackson claims that his personal property was unlawfully confiscated and never returned, this claim also fails.  When a state actor unlawfully deprives an individual of personal property, there is no relief available under § 1983, so long as state law provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 536, 104 S.Ct. 3194 (1984).  Arkansas has a remedy for the loss of personal property through its Claims Commission, so there is no federal remedy available.

unconstitutional to use a "strip cell" and that he should have been provided a drinking cup, mattress, a blanket, and other personal items.  Essentially, Mr. Jackson is claiming that conditions of his confinement in the "strip cell" were unconstitutional.  To establish that conditions of confinement violate the Eighth Amendment, a prisoner must show that the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Mr. Jackson cannot make this showing.

The undisputed evidence reveals that Mr. Jackson was placed on "behavior control" for approximately twenty-four hours.  (#30-6)  During that time, Mr. Jackson admits that he was provided a blanket.  (#2 at p.12)  Based on the limited time that he was on behavior control, the denial of a mattress, clothing, soap, and cup did not deprive him of the minimal civilized measures of life's necessities.  Although plainly uncomfortable, subjecting Mr. Jackson to the limitations imposed on inmates on behavior control did not amount to an eighth amendment violation.  See *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82 (8th Cir. 1996) (no eighth amendment violation by prison officials for denying inmates underwear, blankets, a mattress, and exercise over a four-day period); see also *Williams v. Delo*, 49 F.3d 442 (8th Cir. 1995) (no constitutional violation for inmate confined to a strip cell for four days without bedding, a mattress, soap, and other hygiene items).

Furthermore, the Defendants' alleged failure to follow ADC policy does not rise to a constitutional level. *McClinton v. Arkansas Dep't of Corr.*, 166 Fed. Appx. 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)). Allegations about that conduct do not state a federal claim for relief.

## V.    Conclusion:

The Court recommends that the Defendants' motions for summary judgment (#28, #38) be GRANTED.  Mr. Jackson's claims against Defendants Shipman, Kelly, Morris, and Spears should be DISMISSED, without prejudice, based on his failure to exhaust his administrative remedies.  His retaliation claims against Defendants Nelson and Owens should also be DISMISSED, without prejudice, based on his failure to exhaust administrative remedies.  Mr. Jackson's remaining claims should be DISMISSED on the merits, with prejudice.

DATED this 17th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE